in the order listed on the calendar. The first case on calendar for argument is Stickney v. Internal Revenue Service. Counsel, please approach. William Taggart Good morning, Your Honors. I'm William Taggart. I represent Sandra Stickney in this matter. I would like to make two very brief points that I think will create a foundation for answering any questions you have, and I anticipate you'll have a number of questions. The first point relates to the matter of when a – when the Internal Revenue Service becomes a creditor of a taxpayer. In Charles Stickney's case, we're talking about a 1995 income tax liability, and I submit that the first point in time that you have to look at is the last day of the taxable year, because in a taxpayer's tax liability could be determined as of that point, which would be 12-31-1995. Counsel, before we even get to that question, did the district court have jurisdiction over this matter? I believe it did. Throughout the proceedings, I realized that question has been raised, and that really gets to the second point. Sandra Stickney, when the financial pressures became great, filed a quiet title action to expunge a nominee lien that had been recorded against her in February of 1998. That action was originally filed in Alameda Superior Court, was removed to the federal district court, and remained pending throughout that period of time. So I think the court always had jurisdiction over that case. Under the quiet title statute? The quiet title statute. So did the government waive its sovereign immunity to be sued under the quiet title statute in the circumstances of this case? I believe it did. There was a cloud on title. The government claimed that it had a lien on the property, and she properly brought an action to expunge that lien and quiet title in herself, free of that lien. It's no longer really an action to quiet title, is it? I mean, you're not asking for title of the property to be quiet on you. You're looking for money. Well, but that is because the property was sold. Voluntarily. No, it wasn't sold voluntarily. It was sold under financial pressure because the Stickneys could no longer afford to pay the mortgage on the property. It was voluntary in that sense. They were going to be foreclosed if they didn't show up. But the government didn't compel the sale or foreclose on the property. That is correct. It was voluntarily sold, and a portion of the proceeds of the sale of the property were applied pursuant to the nominee lien. But the distinction you have to draw is between a the Federal tax lien, which was the second point I was going to make, which arises on the filing of a tax return. If you file a tax return, don't pay the tax, the Federal tax lien attaches to all of the property owned by the taxpayer wherever situated. A notice of Federal tax lien is filed to make that public record. Charles Stickney's case, that occurred in January of 1997. The nominee lien, which was the lien pursuant to which the funds were collected, was recorded in February of 1998, and that has no statutory basis. That is a creature created administratively, approved judicially. And the theory of a nominee lien is that the nominee named in the notice of Federal tax lien, it's got a distinction between the lien itself and the notice of Federal tax lien, that a nominee notice of Federal tax lien is recorded under the theory that the person named in the lien is, in fact, the taxpayer, and the lien is attached to the property. Now ---- Counsel, are you familiar with that recent case of Dunn v. Black? That was the nominee lien case was decided about six months ago, a year ago. Right. Where it says that the reach of the quiet title statute is extremely limited, that it only covers situations where the state has ---- where the government has claimed an interest, a lien interest in the property. Why doesn't that bar your action? Because the government did, pursuant to the nominee lien, I think improperly, claim an interest in the property. It filed a lien stating that Sandra Stickney held title as the nominee of Charles Stickney. And that the government already filed a lien against Charles Stickney. They had a lien recorded in May of 1997, had a lien on all of his property, including his beneficial interest in the trust. The nominee lien was recorded against Sandra Stickney. And since the United States already had a lien on Charles Stickney's interest in his trust, the only thing that that nominee lien could attach to is Sandra Stickney's legal title as trustee under the two trusts and her beneficial interest. Now, counsel, if we move beyond the jurisdictional point, why wasn't this a fraudulent transfer? That was what I was going to point out when the liability arises. The earliest time could be December 31st of 1995. The filing of the tax return on October 15th of 1996. But is that the critical thing? If the transfer was in anticipation that there was going to be a tax liability. Under 3439A1, if I remember the citation correctly, there are three different tests for when actual fraud occurs. The first one, which is what the Court below focused on, requires that there be a transfer that is fraudulent as to a creditor. And at the time the transmutation agreement was executed and the trusts were created, there was no creditor in existence. If the transfers had occurred in December of 1996, instead of December of 1995, the Interim Revenue Service would have had a creditor, would have been a creditor, and in fact, would have had a lien on all of Charles Stickney's property that would have carried over. But in this case, there was no creditor. So under the first test, a conveyance cannot be fraudulent because it has to be fraudulent as to some creditor. If it's fraudulent as to some creditor, then it is fraudulent as to both present and future creditors. Do you have a case that supports that proposition? That particular part of the Uniform Fraudulent Transfer Act I don't think has ever been construed in a context that focuses on the question of whether a creditor has to exist, because except in some rare case like this, there is always a creditor that's fraudulent as to. But here, they did it because they knew that the Internal Revenue Service was going to have to be satisfied with a rather large payment. And it was always going to be satisfied. The only question is when it is going to be satisfied, because it had a lien on property that was adequate to cover it, and in fact, in large part did when the property was sold. And if it is sent back and the money is paid back, it goes back into Charles Stickney's trust. The government will reassess the tax. It will have a lien on it, and ultimately will undoubtedly be paid. But it's really a question of the timing of when things occurred and when the government became a creditor and when the liens arose. And in this case, it's never going to come up this way again, because this is one of the very circumstances that resulted in the enactment in 1998 of the collection due process provisions, and this case would be disputed, resolved, and in some way judicially reviewed under the statute. Counsel, did you want to save some time for rebuttal? Yes, please. All right. Thank you. May it please the Court. My name is Terry Milton, representing the government here. As the Court may imagine, our primary argument is the jurisdictional argument, that the Court was lacking jurisdiction because, although it had jurisdiction at the commencement of this quiet title action, once the property had been sold and the IRS released its lien, there was no longer any jurisdiction under Section 2410, and then the district court allowed the plaintiff to amend her complaint. But as we discussed in our brief, each of the causes of action alleged in the amended complaint is deficient also for a jurisdictional basis. And I could discuss that further, but I wanted to go back for just a minute to discussing the merits of the fraudulent conveyance argument. California Code Section 3439.04 is the one that addresses actual fraud in a fraud as grounds for a fraudulent conveyance claim, and it refers to the fact whether the creditor's claim arose before or after the transfer was made. We don't dispute that this – well, this Court has said in a case called Edelson, 829 Fed 2nd, 828, that unassessed tax liabilities are deemed obligations. They're due and owing at the close of the taxable year. So what counsel has said, December 31st of 1995 is the date that Mr. Stickney would be deemed to owe his 1995 taxes. But he would – that would make the IRS a creditor whose claim arose after the transfer was made, which supports the district court's finding based on the fact that the court found that there was actual intent to hinder the IRS's collection efforts. I would point out that the arguments that Mrs. Stickney makes are supportive of the court's finding. Whether the court had to draw inferences or not, the statements that are made by Mrs. Stickney support the finding that there was an intent to hinder the IRS's collection. The – Mrs. Stickney makes much of the fact that Mr. Stickney didn't have enough liquid assets to pay his taxes when they came due, but that's why Congress has given the IRS pretty substantial collection abilities against a person's assets. And what they've done here is try to set aside those assets so that the IRS couldn't get to them. And in the reply brief, she says that the entire point was to forestall the IRS's ability to collect against the residents until after Mr. Stickney died or after 15 years, the IRS could then go against the children. But that is precisely what a taxpayer may not do by trying to set aside assets to avoid the IRS's ability to – and again, it's a pretty substantial ability to levy and place liens and foreclose on the assets of a taxpayer to collect the money. And the taxpayer doesn't really get to decide when to pay. If the taxpayer doesn't pay when the taxes are due, then the IRS has a fair amount of control over when it's going to collect those taxes once they've become due and are not paid. So I think there can't be any dispute that the district court was correct when it found that this was a fraudulent conveyance within the meaning of the California Code. But again, I would like to go back and say that I believe that the Court was lacking in jurisdiction once the property had been sold. Before you get to that, there's – the argument is made by the appellant that we really – there was no giving away of value because, you know, we had an undivided common interest and we divided it and the value remains the same. And so one of the badges of fraud is missing. Do you have a response to that argument? I – my response is, based on my rather superficial knowledge of California community property law, I have looked into it. But I believe that our lien against the residents as a piece of community property was against the entire residence. Well, that's clear. That would be clear if you had the lien right. Again. So it seems to me that if the equity in the residence was $120,000, by turning it into a one-half interest in the residence that held as a tenant in common, Mr. Stickney had reduced his interest to half of that amount, or the pool of money that the IRS had the access to then became $60,000. Right. And then he gave away the remainder to his children before he conveyed – as he conveyed the property into his trust, which reduced its value again. So I would not say it was a – he didn't end up with the same thing at the end as he had had at the beginning, although he ended up with the right to live in the house. Did the district court find the fraudulent transfer to be the division of the property into separate property or the later transfer into trust? I'm not clear about that, and I recall thinking about that at the time.  But the transmutation agreement is what the district court referred to repeatedly as the genesis of the problem here. But, again, that's just – I think that is the genesis of the problem, the splitting of the community property into separate interests. I don't think I have anything more to say other than – I don't think there's anything more to say other than what was said in our brief about the statutes that were raised in the amended complaint as possible grounds for jurisdiction. There are reasons that none of those statutes would support the district court's jurisdiction, and we point them out in our brief. Sections 7432 and Section 7433 of the Internal Revenue Code give taxpayers some rights against the IRS in terms of erroneous collection action, but they are confined to the taxpayer whose taxes are being collected, and that's not Mrs. Stickney in this case. And the only other argument that was made was that there had been some kind of constructive fund set up under the statutes, under the Internal Revenue Code, which is a mechanism that a – that a third party can use to get a lien removed from property and then fight later over who's entitled to the money that's going to come out of the property that had the lien against it. But there's no claim that any of the procedures that would support that claim were followed in this case. So our position is that what Mrs. Stickney needed to do was to file a refund claim, and her situation is very similar to that of the plaintiff in the U.S. v. Williams Supreme Court case. And her failure to file such a refund claim barred the court of jurisdiction over even a refund suit, which wasn't alleged in any event. This is an odd case in that they're not challenging that the tax is owed. So I don't know whether you could file a refund claim or not. Well, she would like some money back that the IRS took, so that would be a strange refund suit, I agree. It's like, as I said, it's like Mrs. Williams' suit in U.S. v. Williams, where she wasn't the taxpayer, but she claimed it was her money that had been used to pay her husband's taxes. And the Supreme Court said that she could file a refund suit in that – in a very specific set of circumstances, but they're similar to the circumstances here. If the Court has no other questions. It appears not. Thank you, counsel. Rebuttal. I'd like to go back just for a moment to the nominee lien issue and the jurisdiction. The money was taken. It was a voluntary sale in that sense. The money was taken, but the money was taken pursuant to a nominee lien. It was not taken pursuant to the lien that was recorded or the notice of Federal tax lien that was recorded with respect to Charles Stigney. It was taken with respect to the notice of Federal tax lien that was recorded with respect to Sandra Stigney. And that really assumes the matter in issue, because if that is assuming that it was proper, because it was proper to record the nominee lien, I would submit to you that in a trust, it's never proper to record a nominee lien against a trustee unless the trust itself is fraudulent. Now, I can give you a quick example of one where it would be. If Charles Stigney had transferred his half interest into a trust, naming his trust as his wife as trustee and naming her the beneficiary of the trust, that would have been a fraudulent transfer, I believe. Perhaps on timing it wouldn't be technically, but that would be a proper case for the recording of a nominee lien because she, in fact, is standing both as the trustee and the beneficiary in his shoes. But that isn't what happened. Counsel, please wrap up. You've exceeded your time. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument
judges: B. Fletcher, Canby, Rawlinson